# In the United States Court of Federal Claims

No. 10-587C
Filed: July 31, 2012
**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| WATTERSON CONSTRUCTION | \* | |
| COMPANY, | \* | Equal Access to Justice Act, 28 U.S.C. § |
| | \* | 2412 (2006); |
| Plaintiff, | \* | "Prevailing Party;" |
| | \* | "Substantial Justification." |
| v. | \* | |
| | \* | |
| THE UNITED STATES, | \* | |
| | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION AND FINAL ORDER REGARDING APPLICATION FOR ATTORNEY FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT

**S. Lane Tucker,** Stoel Rives LLP, Anchorage, Alaska, Counsel for Plaintiff.

**Lauren Springer Moore,** United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

**BRADEN,** *Judge.*

## I.     RELEVANT FACTUAL BACKGROUND.[1]

On July 27, 2009, the Army Corps of Engineers ("Army Corps") issued Request For Proposals No.W911KB-09-R-0011 FTW336B for the "design and construction of a standard barracks to house 294 persons in Fort Wainwright, Alaska" ("the July 27, 2009 RFP").  *See Watterson Constr. Co.* v. *United States*, 98 Fed. Cl. 84, 86 (2011).  In response, Watterson Construction Company ("Watterson") submitted a proposal and eventually advanced to the second phase of the bidding process.  *Id.*  The Army Corps required final, second-phase proposals to be submitted by March 16, 2010, at 12:00 p.m.  *Id.* at 87.  On March 16, 2010, at 11:01-11:02 a.m., Watterson sent a final proposal by e-mail to the Contracting Officer's ("CO")

---

[1] The facts herein were derived from: *Watterson Constr. Co.* v. *United States*, 98 Fed. Cl. 84 (2011); Plaintiff's September 28, 2011 Verified Application For Costs And Fees Under The Equal Access To Justice Act ("Pl. App."), and attached Exhibits ("Pl. App. Exs. 1-11"); the Government's December 12, 2011 Response ("Gov't Resp."); Plaintiff's March 13, 2012 Reply ("Pl. Reply"), and attached Exhibit ("Pl. Reply Ex."); the Government's March 27, 2012 Sur-Reply ("Gov't Sur-Reply"), and the attached Appendix ("Gov't App."); and Plaintiff's April 4, 2012 Sur-Reply to the Government's Sur-Reply ("Pl. Sur-Reply").

e-mail address. *Id*. At no later than 11:29 a.m., this e-mail proposal was "received" by an Army Corps server. *Id*. Watterson's e-mail proposal, however, did not "arrive" in the CO's e-mail inbox until 12:04 p.m., four minutes after the time due. *Id*. The delay between the receipt of Watterson's e-mail proposal at the Army Corps server and actual delivery to the CO's e-mail inbox was nominally caused by an unexplained "mail storm"[2] at the Army Corps e-mail servers. *Id*. On March 19, 2010, the Army Corps informed Watterson that the March 16, 2010 e-mail proposal was considered late and eliminated from consideration. *Id.*

On August 31, 2010, Watterson filed a Complaint in the United States Court of Federal Claims, alleging, *inter alia*, that the Army Corps improperly rejected Watterson's proposal. *Id*. at 88. Watterson's litigation position was that "the Government receives a bid at the time the bidder relinquishes control," and therefore Watterson's March 16, 2010 e-mail proposal was not late because it was due on March 16, 2010 at 12:00 p.m. and it was received no later than March 16, 2010 at 11:29 a.m. *Id*. at 91-92. In addition, Watterson argued that even if its e-mail proposal was late, the lateness should have been excused under the "Government Control" exception set forth in FAR 52.215-1(c)(3)(ii). *Watterson*, 98 Fed. Cl. at 93. Watterson also argued that, even if its e-mail proposal was late, the March 16, 2010 "mail storm" was an "emergency" or "unanticipated event" that would provide for a one-day extension, pursuant to FAR 52.215-1(c)(3)(iv). *Watterson*, 98 Fed. Cl. at 97.

The Government's position was that "the Government office designated in the solicitation" was the CO's office or the CO's e-mail inbox, and therefore the e-mail proposal was late because it was not delivered to the CO's e-mail inbox until 12:04 p.m. *Id*. at 92. In addition, the Government argued that the "Government Control" exception in FAR 52.215-1(c)(3)(ii) does not apply to proposals submitted by e-mail, and therefore did not excuse the lateness of Watterson's proposal. *Watterson*, 98 Fed. Cl. at 95. The Government also argued that the one-day extension in FAR 52.215-1(c)(3)(iv) did not apply, because the "mail storm" was not an "emergency" or "unanticipated event" that "interrupted normal Government processes." *Watterson*, 98 Fed. Cl. at 97. Moreover, the Government argued that, because "normal Government processes" resumed on the same day the disruption began, the plain language of FAR 52.215-1(c)(3)(iv) required that the proposals still be due on March 16, 2010 at 12:00 p.m. *Watterson*, 98 Fed. Cl. at 97-98.

On March 29, 2010, the court issued a Memorandum Opinion And Order that granted Watterson's Motion For Judgment On The Administrative Record. *Id*. at 99. Therein, the court determined that the Army Corps erred when it treated Watterson's proposal as late under FAR 52.215-1(c)(3)(i), (ii). *Watterson*, 98 Fed. Cl. at 93. In the alternative, assuming *arguendo* that the proposal was late, the court determined Watterson's proposal improperly was eliminated from competition, because FAR 52.215-1(c)(3)(ii) excused the lateness. *Watterson*, 98 Fed. Cl. at 97. In addition, the court determined that FAR 52.215-1(c)(3)(iv) entitled Watterson to a one-day time extension. *Watterson*, 98 Fed. Cl. at 98. The court deferred entry of final judgment pending submission of evidence of bid preparation costs. *Id*. at 99.

---

[2] A "mail storm" is an "e-mail sent to a large number of users, a sufficient number of whom reply to all, flooding an e-mail system and disabling it." *Watterson*, 98 Fed. Cl. at 87.

On April 28, 2011, Watterson submitted evidence of bid preparation costs and requested that the court enter judgment in the amount of $345,480.00. On June 27, 2011, the Government filed an Objection, indicating that the parties agreed that total damages should be reduced by $1,989.91. On June 28, 2011, the court entered Final Judgment in favor of Watterson in the amount of $343,490.09.

## II.    PROCEDURAL HISTORY.

On September 28, 2011, Watterson filed a Verified Application For Costs And Fees Under The Equal Access To Justice Act, 28 U.S.C. § 2412(d)(1)(A) ("EAJA"), for an award of attorney's fees. On December 12, 2011, the Government filed a Response. On March 13, 2012, Watterson filed a Reply and a Supplement to the September 28, 2011 Verified Application For Costs And Fees seeking additional costs incurred since the initial September 28, 2011 Application was filed. On March 27, 2012, the Government filed a Sur-Reply. On April 4, 2012, Watterson filed a Sur-Reply.

## III.    DISCUSSION.

### A.    Jurisdiction.

Watterson's September 28, 2011 Verified Application For Costs And Fees invokes the Equal Access to Justice Act as a basis for the court's jurisdiction: "a [federal trial] court shall award to a prevailing party other than the United States fees and other expenses . . . in any civil action . . . brought by or against the United States in any court having jurisdiction of that action" if certain requirements are met. *See* 28 U.S.C. § 2412(d)(1)(A). Since the United States Court of Federal Claims had jurisdiction to adjudicate Plaintiff's August 31, 2010 Complaint, the court also has jurisdiction to adjudicate Plaintiff's subsequent attorney fees and costs claim. *See Burkhardt* v. *Gober*, 232 F.3d 1363, 1367 (Fed. Cir. 2000) ("We hold that the EAJA language in question, 'having jurisdiction of that action,' is plain, clear, and unambiguous. The words 'that action' clearly refer to the preceding language in the EAJA reciting the 'civil action . . . brought by or against the United States.'" (quoting 28 U.S.C. § 2412(d)(1)(A)) (ellipsis in original)).

### B.    Attorney Fees And Costs Under The Equal Access To Justice Act.

Section 2412(d)(1)(A) of the EAJA states that:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

Section 2412(d)(1)(B) of the EAJA states:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified.

28 U.S.C. § 2412(d)(1)(B).

Section 2412(d)(2)(B)(ii) of the EAJA defines a "party" as "any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed[.]" 28 U.S.C. § 2412(d)(2)(B)(ii).

The United States Supreme Court has held that the EAJA requires: "(1) that the claimant be a 'prevailing party'; (2) that the Government's position was not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and, (4) pursuant to 28 U.S.C. § 2412 (d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement." *Comm'r, INS* v. *Jean*, 496 U.S. 154, 158 (1990).

### C.    Whether Plaintiff Is Entitled To Attorney Fees And Costs Under The Equal Access To Justice Act.

#### 1.    Whether Plaintiff Is A "Prevailing Party."

The United States Court of Appeals for the Federal Circuit has stated that "[a]lthough the EAJA does not define the term 'prevailing party,' '[a] typical formulation is that plaintiffs may be considered 'prevailing parties' for attorney fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit[.]'" *Austin* v. *Dep't of Commerce*, 742 F.2d 1417, 1419 (Fed. Cir. 1984) (quoting *Hensley* v. *Eckerhart*, 461 U.S. 424 (1983)) (second alteration in original). The Government does not dispute that Watterson "prevailed on each of its most significant claims" and was "awarded $343,490.09 for its bid preparation costs" as the "prevailing" party in this case. Gov't Resp. at 8; Pl. App. at 4-5.

In order to be eligible for attorney fees under the EAJA, however, Watterson also must satisfy the EAJA's definitional requirements for being a "party." *See* 28 U.S.C. § 2412(d)(2)(B)(ii). Section 2412(d)(2)(B)(ii) defines a "party" as "any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed[.]" 28 U.S.C. § 2412(d)(2)(B)(ii). The Government does not dispute that Watterson had fewer than 500 employees at the time the civil action was filed. The Government argues, however, that because Watterson's net worth was over $7,000,000 at the time the civil action was filed, Watterson is

not eligible to receive an award of attorney's fees under the EAJA.  Gov't Resp. at 7.  It is Plaintiff's burden to establish that it satisfies the net worth requirement.  *Fields* v. *United States*, 29 Fed. Cl. 376, 382 (1993), *aff'd*, 64 F.3d 676 (Fed. Cir. 1995).

Watterson's civil action was filed on August 31, 2010.  *See Watterson*, 98 Fed. Cl. at 88. Watterson does not have an audited financial statement for that exact date because it falls in the middle of Watterson's fiscal year, which runs from November 1st through October 31st.  Pl. App. Ex. 10.  Watterson argues that it meets the EAJA's net worth requirement because its fiscal year 2009 financial statements, the most recent audited financial statements available at the time its civil action was filed, indicate that its net worth was $4,500,000.  Pl. App. Ex. 4.  In addition, Watterson submitted its balance sheet for August 31, 2010, which showed Watterson's net worth as $8,444,579.42.  Pl. Reply Ex. at 45.  Watterson argues that in order to accurately reflect its net worth adjustments must be made to the August 31, 2010 balance sheet.  Pl. Reply at 4. Specifically, Watterson argues that "profit fade,"[3] "pro-rated bonuses," and "profit-sharing" adjustments should be applied to its August 31, 2010 balance sheet.  Pl. Reply at 4; *see also* Pl. Reply Ex. at 52.  These adjustments reduce Watterson's August 31, 2010 net worth from $8,444,579.42 to $6,722,686.42.  Pl. Reply Ex. at 52.

The Government argues that Watterson's net worth must be proved as of August 31, 2010, the exact date Watterson's action was filed, and therefore its fiscal year 2009 financial statements are not controlling.  Gov't Resp. at 5.  In addition, the Government argues that Watterson's "profit fade," "pro-rated bonuses," and "profit-sharing" adjustments should not be applied to Watterson's August 31, 2010 balance sheet when calculating net worth.  Gov't Sur-Reply at 4-5.  The "pro-rated bonuses" and "profit-sharing" adjustments are inappropriate because Watterson does not account for bonuses and profit-sharing at the end of each month, but rather on October 31, at the end of its fiscal year.  Gov't Sur-Reply at 5.  The "profit fade" adjustment is inappropriate because: it is inconsistent with the accrual method of accounting; it should not have been applied in its entirety to August 2010; and it should be applied to all of Watterson's jobs, not just the two singled out by Watterson.  Gov't Sur-Reply at 6-7.

As observed by the United States Court of Appeals for the Seventh Circuit, "no standard practice or rule" has developed for establishing how a plaintiff can satisfy the EAJA's net worth requirement.  *See Sosebee* v. *Astrue*, 494 F.3d 583, 587 (7th Cir. 2007) ("The question we must address is thus whether [plaintiff] satisfactorily showed both that he prevailed and that he met the financial eligibility criteria of § 2412(d)(2)(B). . . .  Somewhat surprisingly, no standard practice or rule for fee petitions seems to have developed.").  In this case, the parties have not submitted, and the court has not found, any controlling case law on the propriety of the proposed adjustments to Watterson's August 31, 2010 balance sheet.  The court, however, has determined that it does not need to resolve this issue, because, as discussed herein, the Government's position was substantially justified.

---

[3] On October 31, 2011, Watterson anticipated $550,006.00 in lost profits from Job FTW336C and Job FTR265.  Pl. Reply Ex. at 52.  The "profit fade" adjustment was made in order to reflect the difference between the August 31, 2010 and October 31, 2011 expected profits.  Pl. Reply Ex. at 52.

2.        **Whether The Government's Position Was "Substantially Justified."**

The United States Supreme Court has defined "substantially justified" to mean "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person." *Pierce* v. *Underwood*, 487 U.S. 552, 565 (1988).  In determining substantial justification, the court must "look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu* v. *United States*, 948 F.2d 711, 715 (Fed. Cir. 1991).  "To be 'substantially justified' means . . . more than merely undeserving of sanctions for frivolousness." *Pierce*, 487 U.S. at 566.  "Congress did not, however, want the substantially justified standard to be read to raise a presumption that the Government position was not substantially justified simply because it lost the case[.]" *Scarborough* v. *Principi*, 541 U.S. 401, 415 (2004) (citation and internal quotations omitted). The Government bears the burden of establishing, by preponderance of the evidence, that its position was substantially justified. *See Doty* v. *United States*, 71 F.3d 384, 385 (Fed. Cir. 1995) ("When a party has prevailed in litigation against the government, the government bears the burden of establishing that its position was substantially justified." (citations omitted)).  To satisfy its burden, the Government must justify its position throughout the litigation and also its pre-litigation conduct. *See Jean*, 496 U.S. at 159.

a.        **The Government's Argument.**

The Government argues that its position was substantially justified because the treatment of Watterson's proposal as late and the subsequent decision not to apply the late proposal exceptions in FAR 52.215-1(c)(3)(ii) and FAR 52.215-1(c)(3)(iv) had a reasonable basis in law and fact.  Gov't Resp. at 8-13.

FAR 15.208 states that "[o]fferors are responsible for submitting proposals, and any revisions, and modifications, so as to reach the Government office designated in the solicitation by the time specified in the solicitation."  48 C.F.R. § 15.208.  The Government argues that the CO properly rejected Watterson's proposal as untimely because, although it reached the Government's server by 11:29 a.m. on March 16, 2010, it did not reach the CO's e-mail inbox, the "Government office designated in the solicitation," until 12:04 p.m., four minutes after the deadline of 12:00 p.m.  Gov't Resp. at 9.  This position is consistent with the court's determination that the CO's e-mail inbox was the "Government office designated in the solicitation" for the timely receipt of proposals.[4]  Gov't Resp. at 9 (citing *Watterson*, 98 Fed. Cl. at 93).  This position is also consistent with the court's determination that Watterson's proposal reached the CO's e-mail inbox at 12:04 p.m. on March 16, 2010, four minutes after the noon deadline.  *See Watterson*, 98 Fed. Cl. at 87.  Therefore, the Government's position was based on a reasonable interpretation of law and fact.

The Government argues that the decision not to extend the submission deadline because of a computer malfunction also was based upon a reasonable interpretation of law and fact.

_____

[4] The court does not agree with the Government's statement of the holding in *Watterson*. Therein, the court found that the "Government office designated in the solicitation" was the "CO's e-mail address," not the CO's e-mail inbox.  *Watterson*, 98 Fed. Cl. at 93.

FAR 52.215-1(c)(3)(iv) states:

> If an emergency or unanticipated event interrupts normal Government processes so that proposals cannot be received at the office designated for receipt of proposals by the exact time specified in the solicitation, and urgent Government requirements preclude amendment of the solicitation, the time specified for receipt of proposals will be deemed to be extended to the same time of day specified in the solicitation on the first work day on which normal Government processes resume.

48 C.F.R. § 52.215-1(c)(3)(iv).

The Government argues that the decision not to extend the submission deadline was substantially justified for two reasons. First, FAR 52.215-1(c)(3)(iv) does not apply because, although there was a "mail storm" the morning of March 16, 2010, the "mail storm" was not an "emergency" for purposes of FAR 52.215-1(c)(3)(iv). Gov't Resp. at 10. Second, even if the clause applies, the decision was in accord with the plain language of FAR 52.215-1(c)(3)(iv), which specifically states that "the time specified for receipt of proposals will be deemed to be extended to the *same time of day* specified in the solicitation *on the first work day on which normal government processes resume*." 48 C.F.R. § 52.215-1(c)(3)(iv) (emphasis added). The unanticipated interruption of "normal Government processes" caused by the "mail storm" on March 16, 2010 was abated that same morning. Plaintiff's proposal, therefore, was still due on March 16, 2010, at noon, according to the plain language of the clause. Gov't Resp. at 11.

Finally, the Government argues that, based on a reasonable interpretation of law and fact, FAR 52.215-1(c)(3)(ii)(A)(2) did not render Watterson's proposal timely. FAR 52.215-1(c)(3)(ii)(A)(2) provides an exception to the late proposal rule when "[t]here is acceptable evidence to establish that [the proposal] was received at the Government installation designated for receipt of offers and was under the Government's control prior to the time set for receipt of offers[.]" 48 C.F.R. § 52.215-1(c)(3)(ii)(A)(2). There was a substantial argument, however, that this FAR provision, did not apply to electronic proposals. Gov't Resp. at 12. In support, the Government cited *Sea Box, Inc.*, B-291056, 2002 CPD ¶ 181 (Comp. Gen. Oct. 31, 2002), in which the Government Accountability Office ("GAO") held that the "Government control" exception does not apply to electronically submitted proposals, and *Conscoop-Consorzia* v. *United States*, 62 Fed. Cl. 219, 239-40 (2004), in which the United States Court of Federal Claims followed the holding in *Sea Box*. Gov't Resp. at 12. Although this court disagreed with the GAO's holding in *Sea Box*, the Government argues that its interpretation and reliance upon the existing case law were reasonable and substantially justified. *See Broad Ave. Laundry and Tailoring* v. *United States*, 693 F.2d 1387, 1392 (Fed. Cir. 1982) ("On the basis of the law as it stood after the Board decision, it was far from clear that the Board's decision was erroneous or that the Court of Claims would reverse it. In those circumstances, it was reasonable for the United States to defend the Board's decision before the Court of Claims.").

### b.    Plaintiff's Argument.

Plaintiff counters that the Government's pre-litigation conduct was not substantially justified, because the Army Corps' actions that led to litigation were not justified to a degree that would satisfy a reasonable person. *See Pierce*, 487 U.S. at 565. The CO should not have

eliminated Watterson's proposal from consideration since it was not late.  In *Watterson*, this court considered the three elements of FAR 52.215-1(c)(3)(i), (ii) in determining that Plaintiff's proposal was not late.  Pl. App. at 8.  First, the court held that the "Government office designated in the solicitation," as amended, was the CO's e-mail address.  *See Watterson*, 98 Fed. Cl. at 92-93.  Next, the court observed that "there is no dispute that the 'time specified in the solicitation,' as amended, was March 16, 2010 at 12:00 p.m., Alaska Time."  *Id.* at 93.  Finally, the court held that Plaintiff's proposal "both reached and [was] received by the Government's e-mail servers before the due date" and therefore, as a matter of fact, had reached the Government office designated in the solicitation by the time specified therein.  *Id.*

In addition, Plaintiff argues that the Government's pre-litigation conduct was not substantially justified because the Army Corps incorrectly applied the late proposal rules in FAR 52.215-1(c)(3).  Pl. App. at 9.  As the court determined, an agency is required to extend a submission deadline where computer malfunctions negatively impact the competitiveness of the procurement, and yet the Army Corps did not do so.  *Watterson*, 98 Fed. Cl. at 98.  Furthermore, the Army Corps did not excuse the lateness of the proposal under the "Government control" exception in FAR 52.215-1(c)(3)(ii).  Instead, the Army Corps relied on GAO precedent and dictum from one United States Court of Federal Claims case.  Prior to the award of the contract, however, Watterson advised the Army Corps why that precedent was incorrectly decided, contrary to regulation, and not binding on the Army Corps.  Pl. App. at 9.  The Army Corps does not have the discretion to refuse to follow applicable law, including FAR 15.215-1(c)(3), that required consideration of Watterson's timely proposal.  Pl. App. at 9 (citing *Pacific Island Movers*, B-287643.2, 2001 CPD ¶ 126 (Comp. Gen. July 19, 2001)).  The Army Corps, however, refused to accept Watterson's offer and eliminated two of the three competitive firms, resulting in the selection of an objectively inferior sole source proposal that cost the agency at least $2 million more than it would have paid in a competitive procurement.  Pl. App. at 9.

Plaintiff also argues that the Government's position during litigation was not substantially justified.  The United States Court of Federal Claims has held that "[t]he government's position will not be found to be reasonable or substantially justified when explicit, unambiguous regulations directly contradict that position."  *Geo-Seis Helicopters, Inc.* v. *United States*, 79 Fed. Cl. 74, 78 (2007) (citations omitted).  Here, Watterson's proposal was timely received at the "designated office" under the plain meaning of FAR 52.215-1(c)(3)(i), (ii) and the clear terms of the July 27, 2009 RFP.  *See* Pl. App. at 10.  Moreover, the Government's position was contradicted by the clear terms of FAR 52.215-1(c)(3)(ii), that excused the late proposal, and FAR 52.215-1(c)(3)(iv), that required the agency to grant an extension.  *See* Pl. App. at 10.  The Government has not provided support for its assertions that it was substantially justified and simply reiterates its original position, despite the fact that the position was rejected by this court.  Pl. Reply at 7.  The "substantial justification" question is not measured by Government successes or losses on individual issues but instead by "the totality of circumstances."  *Roanoke River Basin Ass'n* v. *Hudson*, 991 F.2d 132, 139 (4th Cir. 1993) ("[W]hen determining whether the government's position in a case is substantially justified, we look beyond the issue on which the petitioner prevailed to determine, from the totality of circumstances, whether the government acted reasonably[.]").  Looking at the totality of circumstances in this case, the key factor is that Watterson recovered $343,490.09 as damages on its original claim of $300,000 for bid preparation and proposal costs.  Pl. App. at 12.

c.     **The Court's Resolution.**

For the reasons discussed herein, the Government has met its burden of establishing that its position was substantially justified. The Government's position during litigation concerned the following pre-litigation decisions: treating Watterson's proposal as late under FAR 52.215-1(c)(3)(i), (ii); declining to excuse the proposal's lateness under FAR 52.215-1(c)(3)(ii)(A)(2); and declining to extend the proposal submission deadline under FAR 52.215-1(c)(3)(iv).

i.     **Treating Plaintiff's Proposal As Late And Eliminating The Proposal From Consideration Was Substantially Justified.**

FAR 52.215-1(c)(3)(i), (ii), the regulation governing whether a proposal is late, states:

Offerors are responsible for submitting proposals, and any modifications or revisions, so as to reach the Government office designated in the solicitation by the time specified in the solicitation. . . . Any proposal, modification, or revision, received at the Government office designated in the solicitation after the exact time specified for receipt of offers is "late" and will not be considered[.]

48 C.F.R. § 52.215-1(c)(3)(i), (ii).

The court previously held that Watterson's proposal was not late and should not have been eliminated from consideration. *See Watterson*, 98 Fed. Cl. at 93. Specifically, the court found that "the 'time specified in the solicitation,' as amended, was March 16, 2010 at 12:00 p.m., Alaska Time." *Id*. In addition, based on the plain language of the Army Corps' solicitation, the court found that the "Government office designated in the solicitation," as amended, was the CO's e-mail address. *Id*. at 92-93. The court equated the CO's e-mail address with the Government's e-mail servers and determined that the proposal "both reached and [was] received by the Government's e-mail servers before the due date." *Id*. at 93. Therefore, the proposal reached the CO's e-mail address, the "Government office designated in the solicitation," by the time specified. *Id*.

The Government's position was that the "Government office designated in the solicitation" was the CO's e-mail inbox, and that the proposal was not received by the specified time because it did not reach the CO's e-mail inbox until after the "time specified in the solicitation." *Id*. at 92. There is no dispute that the "time specified in the solicitation," as amended, was March 16, 2010 at 12:00 p.m., Alaska Time. *Id*. at 93. Therefore, the difference between the court's finding in *Watterson* and the Government's position was whether the CO's e-mail address, the "Government office designated in the solicitation," was the Government's e-mail servers or the CO's e-mail inbox.

Based on the July 27, 2009 RFP and the nine amendments attached thereto, it is clear that the "Government office designated in the solicitation" was the CO's e-mail address. The CO's e-mail address, however, could have been reasonably interpreted to mean either the Government server receiving e-mails or the CO's inbox through which e-mails were accessed. Prior to the court's disposition in this case, there was no governing authority that discussed whether an e-mail address is the server receiving e-mails or the inbox through which e-mails are accessed. The Government's position – that the proposal was late because it was received by the CO's e-

mail inbox at 12:04 p.m., four minutes after the time specified – was based on a reasonable reading of the July 27, 2009 RFP and FAR 52.215-1(c)(3)(i), (ii). Therefore, the Government's position had a reasonable basis in law and in fact. Although the court did not agree with the Government's substantive position on the merits of the case, the Government's position was substantially justified.

ii.  **Declining To Excuse The Lateness Of Plaintiff's Proposal Under FAR 52.215-1(c)(3)(ii)(A)(2) Was Substantially Justified.**

The "Government control" exception provides that a late proposal may be considered if "[t]here is acceptable evidence to establish that it was received at the Government installation designated for receipt of offers and was under the Government's control prior to the time set for receipt of offers[.]" 48 C.F.R. § 52.215-1(c)(3)(ii)(A)(2).

Assuming, *arguendo*, that Plaintiff's proposal was late, the court determined that the lateness should have been excused under the "Government control" exception. *See Watterson*, 98 Fed. Cl. at 97. The express terms of the "Government control" exception do not address whether the exception applies to electronically submitted proposals. *See* 48 C.F.R. § 52.215-1(c)(3)(ii)(A)(2). In contrast, the express terms of FAR 52.215-1(c)(3)(ii)(A)(1) directly address proposals transmitted through an "electronic commerce method." 48 C.F.R. § 52.215-1(c)(3)(ii)(A)(1). Therefore, the issue before the court was whether only the exception in FAR 52.215-1(c)(3)(ii)(A)(1), and not the "Government control" exception, applied to proposals sent by e-mail. To resolve this issue, the court examined the regulatory history of the late proposal exceptions in the FAR and concluded that, "in cases of non-batch delivered electronic commerce, late proposals may be excused under [the 'Government control' exception]." *See Watterson*, 98 Fed. Cl. at 97.

The Government argued that "the 'Government control' exception does not apply to proposals submitted by e-mail." *Watterson*, 98 Fed. Cl. at 95. In support, the Government cited *Conscoop-Consorzia*, 62 Fed. Cl. at 239-40, and *Sea Box, Inc.*, B-291056, 2002 CPD ¶ 181. *Sea Box*, a GAO decision that was followed by the United States Court of Federal Claims in *Conscoop*, found that the "Government control" exception does not apply to proposals submitted electronically. *See Sea Box, Inc.*, B-291056, 2002 CPD ¶ 181.

The decision to not apply the "Government control" exception had a reasonable basis in law and fact. It was reasonable for the Government to rely on the GAO decision in *Sea Box* and the United States Court of Federal Claims decision in *Conscoop* as support for its position. FAR 52.215-1(c)(3)(ii)(A) is not clear and unambiguous in indicating that the "Government control" exception applies to e-mail proposals. Indeed, the court in *Watterson* examined the regulatory history of the FAR for this reason. *See Watterson*, 98 Fed. Cl. at 95. In contrast, reliance on GAO cases has been recognized as unreasonable when the Government's position is contradicted by an unambiguous regulation. *See Infiniti Info. Solutions, LLC* v. *United States*, 94 Fed. Cl. 740, 749 (2010) ("[The agency's] regulations at issue are explicit and unambiguous when applied to the facts at hand, and therefore, regardless of GAO's opinion, the government's position before GAO and this court was not substantially justified."); *Geo-Seis Helicopters*, 79 Fed. Cl. at 78 ("The actions of the [Government] contravened the FAR, and the GAO precedents could not excuse that deviation from legal requirements. In short, 'there is no justification for

10

the government's position when clear, unambiguous regulations directly contradict that position.'" (citation omitted)). In this case, the Government's position was not contradicted by an explicit, unambiguous regulation. Therefore, although the court did not agree with the Government's substantive position, the Government's decision not to excuse the proposal's lateness under FAR 52.215-1(c)(3)(ii)(A) was substantially justified.

### iii. Declining To Extend The Proposal Submission Deadline Under FAR 52.215-1(c)(3)(iv) Was Substantially Justified.

FAR 52.215-1(c)(3)(iv) states:

If an emergency or unanticipated event interrupts normal Government processes so that proposals cannot be received at the office designated for receipt of proposals by the exact time specified in the solicitation, and urgent Government requirements preclude amendment of the solicitation, the time specified for receipt of proposals will be deemed to be extended to the same time of day specified in the solicitation on the first work day on which normal Government processes resume.

48 C.F.R. § 52.215-1(c)(3)(iv).

In *Watterson*, the court determined that the March 16, 2010 "mail storm" at the Army Corps' e-mail servers was an "emergency" or "unanticipated event" under FAR 52.215-1(c)(3)(iv). *See Watterson*, 98 Fed. Cl. at 98. The court also found that the Government's argument that, according to the plain language of FAR 52.215-1(c)(3)(iv), proposals were still due on the original due date, would produce an absurd result. *Watterson*, 98 Fed. Cl. at 98. Accordingly, the court determined that "Watterson's proposal was improperly eliminated from the competition, as the disturbance in the Army Corps' servers entitled Watterson to a one-day time extension." *Id.*

In contrast, the Government argued that FAR 52.215-1(c)(3)(iv) did not apply because a "mail storm" is not an "emergency" or "unanticipated event" that "interrupt[s] normal Government processes," within the meaning of the statute. *See Watterson*, 98 Fed. Cl. at 97. The Government also argued that, assuming FAR 52.215-1(c)(3)(iv) applies, the text states that "'the time specified for receipt of proposals will be deemed to be extended to the same time of day specified in the solicitation on the first work day on which normal Government processes resume.'" *Watterson*, 98 Fed. Cl. at 97 (quoting 48 C.F.R. § 52.215-1(c)(3)(iv)). Because "normal Government processes" resumed on the same day that the disruption began, the Government concluded that proposals still were due on the original due date of March 16, 2010 by 12:00 p.m. *See id.* at 97.

The Army Corps' decision not to extend the proposal submission deadline under FAR 52.215(c)(3)(iv) had a reasonable basis in law and fact. Prior to the court's decision, there were no cases where a "mail storm" was considered an "emergency" or "unanticipated event" under FAR 25.215-1(c)(3)(iv). The GAO, however, has considered the "emergency" or "unanticipated event" extension in a number of cases, typically involving natural or man-made disasters. *See Watterson*, 98 Fed. Cl. at 98 (collecting cases). Unlike a natural or man-made disaster, a "mail

storm" is not a typical or clear case for an "emergency" or "unanticipated event" extension. Furthermore, the Government's argument – that because "normal Government processes" resumed on the same day as the disruption, the proposals were due on the original due date – produces an absurd result, but it is based on a plausible reading of the plain language of FAR 52.215-1(c)(3)(iv).  Again, although the court did not agree with the Government's substantive position, the Government's decision to not extend the submission proposal deadline was substantially justified.

## IV.    CONCLUSION.

For the foregoing reasons, Plaintiff's September 28, 2011 Verified Application For Costs And Fees Under The Equal Access To Justice Act is denied.

**IT IS SO ORDERED.**

s/Susan G. Braden
**SUSAN G. BRADEN**
**Judge**